Case number 25-70-59. United States of America ex rel. Prechelle Shannon et al. and Prechelle Shannon Appellant v. BHG Holdings, LLC. Doing business as Behavioral Health Group et al. Mr. Calo for the appellant and Ms. Catlin for the appellees. Mr. Calo, you're ready. Thank you, Your Honor. Good morning. Joe Calo, one of the attorneys representing the appellant, Ms. Shannon. I'd like to request three minutes for rebuttal. Your Honors, this is a simple appeal of a motion to dismiss where a case was decided too early in the process. In strewing all facts in favor of Ms. Shannon and drawing all reasonable inferences in favor of Ms. Shannon, this case should have been allowed to proceed, especially with respect to the unlicensed counselor claims. The district court actually ruled that we had pled those claims with specificity and particularity and pled all the necessary elements of the False Claim Act and Rule 9b and Rule 8 with respect to those claims, but solely knocked us out by saying that we had not pled materiality. But paragraph 94 of the complaint specifically says materiality. Paragraph 94 specifically says that the falsities associated with this were material and that the government would not have made the claims and paid the claims had it known that unlicensed counselors were providing services. Paragraph 94 does say that, but it doesn't say why, and that's what the concern, if there is one, would be. So you need allegations that show not just that the government could have denied payment, but it actually would have. And are those kinds of allegations in your complaint? So what we identify as the statutory framework, which requires licensed counselors and not unlicensed counselors, specifically as a prerequisite for payment, we then identify that they knew that they were not using licensed counselors, tried to solve this issue through supervision, could not solve it through supervision, could not hire third parties to cover it. And my client in particular raised this issue with management trying to solve the particular issues. So the problem, the concern would be that that sounds a lot like the exact argument that Escobar rejected, which was merely showing that some condition of payment was not met is not enough. You need to point to actual experience or reasons to believe the government would deny a claim for this reason. Well, and I would cite the Samini discourse decision, which talked about whether the government would be hoodwinked, whether or not it would make a payment, knowing the facts associated with it. If the basis of the claim is to be paid for licensed counseling, and in fact there is no licensed counseling, it's a reasonable inference under both Escobar and Samini to say the government wouldn't have paid for non-licensed counseling. It's specific in the statute. It doesn't allow for any exceptions. And when we talk about potential exceptions, there may be factually potential exceptions, but we specifically plead that none of the exceptions apply. Where did you plead that? Paragraph 90 of our complaint, where we specifically allege on the Joint Appendix 95 in particular, in Paragraph 90, we specifically say BHG argued supervision to get around the licensed counselor claims. But that's not the only exception. Isn't there also an exception for if you're licensed in another jurisdiction? Absolutely, and that's a factual issue, Judge Pan, that would be decided in a directed verdict, but not at the motion-to-dismiss stage. At the motion-to-dismiss stage, we specifically pled issues for what associated with supervision. We specifically said that was an argument that Ms. Shannon noted had no merit. We talked about their inability to hire third parties to supervise, to hire enough licensed counselors to supervise. We specifically talked about supervision. And what the judge unfortunately did was say, we pled the claim properly, but we didn't plead materiality, and then accepted the defendant's arguments in their motion-to-dismiss on supervision, which is a factual issue. To lose on the supervision issue... But it's not just supervision. I guess there are numerous exceptions, and you didn't plead them all, right? We didn't plead them all, but the only way to get around it is to accept factual allegations from the government, from DHG. You're supposed to accept your allegations, but you have no allegations about the other exception. Because they didn't apply. Because Ms. Shannon's... Do you have to say that? We say that none of the... Paragraph 90 says that none of the supervision exceptions were. Well, the supervision ones, but there are other ones, like if you're licensed in another jurisdiction. But there's no evidence in the record that that's true. It's just a complaint. There's no evidence in the record yet, but you're supposed to allege with specificity how this alleged fraud or whatever misstatement occurred, and you don't... It's not sufficient, is it, to say that some of these exemptions or exceptions don't apply, but others might, and we're leaving it blank. What we alleged, Your Honor, is that they were not using licensed counselors for the claims associated with the clinics. Correct. But under the, I guess, Virginia statute that says you have to use licensed counselors, there are exceptions when you don't have to use licensed counselors. And it seems to me to plead with specificity that there was a misstatement here. You would have to even say generally none of the exceptions apply, but you don't address them all. Well, I think we outlined what we believe was the fraudulent scheme and the documents from BHG, and we say that the supervision doesn't allow it. If you're arguing that we didn't allege every potential exception or every possible scenario to circumvent the claims, what we alleged was a fraudulent scheme. It's a classic fraudulent scheme. But it wouldn't be fraudulent if, for example, these counselors were licensed in another jurisdiction. They would be properly given counseling services, and there wouldn't be any problem with making claims based on that, the services. But that's not what was happening. So we alleged... I understand that. It's not about what was happening. It's whether your complaint adequately alleges the scheme. I believe our complaint adequately alleges the scheme that they were using on licensed counselors, and we presented BHG internal records that show that they knew that they were doing it. And none of those records say that we're using licensed counselors from somewhere else. None of those documents from BHG that we provided say that they were getting around the exception through other means. The documentation confirms that they knew they were not using licensed counselors. That was the fundamental problem. So we didn't plead what-ifs or plead other potential arguments because we plead that they knowingly were using unlicensed counselors for services where they needed actual licensed counselors and didn't have it. So we plead the basics that we need for the claim. I don't believe we're required at the motion to dismiss stage to plead around every potential exception or every potential argument when we plead enough to show what the claims are and identify a fraudulent scheme, which is what we did. Same thing with the unnecessary testing claim, Your Honor. On the unnecessary testing claim, let me... The defendant has an argument that even if you've adequately pleaded that some drug tests were unnecessary, you haven't pled adequately that claims for those unnecessary tests were actually submitted. Could you just sort of give us your answer to that? So the Heath decision from this court specifically discusses that point and identifies that we don't have to identify a particular claim. We're not required to identify an individual claim at the motion to dismiss stage. What we are identifying is that multiple claims were established because it was a standing order, which is a classic false claim allegation around the country. We cite multiple false claim settlements. Let me direct you to one concern I have. So your claim would be strong if your complaint said something like all patients were designated code one and all code one, you know, patients received these unnecessary tests. But I think it's paragraph 67 says certain patients were designated code one and 80% of patients are Medicaid or Medicare. Right. It does not. So there's ambiguity about how many folks were receiving these supposedly unnecessary tests. Well, if 80% of the population is Medicare, Medicaid, and there's a standing order that everyone gets a confirmatory test. But there's not. Your your complaint alleges that code one patients are subject to these standing orders, and you do not say how many patients are code one. That's the concern. But I say 80% of the code one patients are Medicare, Medicaid. So 80% of them would have covered that. And so that's the evidence. Excuse me. That's the allegation that we had at the time. So we identify 80% of the population is Medicare, Medicaid. Where do you say that 80% of 80% of the clinic's patients are Medicare, Medicaid, but you the problem is maybe only 5% of the patients are designated code one. Well, no from the complaint. If it's 5%, it's still 5%. There's some inference that some number of patients using those allegations. Would be covered by this fraudulent scheme and the motion to dismiss stage. I'm not sure we have the information to identify individual claims, but I'm not sure we're required to at the motion to dismiss stage. Those numbers alone identify that there are some allegations that recover. I think I've used all my time. All right. Thank you very much for giving me 2 minutes for rebuttal. Thank you. Good morning. May it please the court. Kayla Stackett Kaplan on behalf of Appellee BHG Holdings LLC. I want to begin with something that Judge Garcia just previewed here with respect to the with particularity, and that's a standard that's well established by this court in U.S. Ex Rel Heath v. AT&T. Relator admits she cannot at this stage allege representative examples of false claims, but the only alternative available under Heath is to allege both particular details of the scheme coupled with reliable indicia that lead to a strong inference that false claims were submitted, and that's exactly what's missing here, and it infects both the unnecessary testing claim and also the counseling claim as well. So on unnecessary testing, the complaint does allege that 80 percent are covered by government-sponsored health care and that there was a widespread practice of unnecessary, on their view, testing. Why doesn't that support an inference that at least some, we might not know exactly which ones, but isn't there a strong inference that at least some false claims are being submitted? Respectfully, no, Your Honor, and I point the court to the most recent decision on the 9B issue here of the U.S. Ex Rel Winnin v. Lozano case where the court specifically addressed how 9B works when you have statistical allegations like we have here of the 80 percent. Statistics could potentially be reliable indicia that a claim was submitted, but what Winnin told us is you have to have a bridge between the specific factual details and the statistic in order to create that reliable indicia, and that's exactly what's missing here. Relator alleges 80 percent, but there's no bridge back to details, which Winnin clarified include things like details about who these patients are, dates when they were seen, things of that nature. You don't need the actual claim for payment, but you still need that type of specific detail to create a bridge to the statistic. And as Your Honor already pointed out, we don't even know who these Code 1 patients are. There's that tells us any particular example patients. It doesn't tell us anything about the clinical characteristics of the Code 1 patients, the demographic characteristics, and the specificity deficiencies go on from there. We're told nothing about who their care team is, who's part of the clinical care team, who's supposedly ordering these standing orders. So I understand the argument that I understand that argument about claims being submitted. You also argue that there aren't adequate allegations that any tests were medically unnecessary, and I'm just wondering how you how is that argument correct in light of the Exhibit A and Paragraph 71? Right, so the Paragraph 71 email does not actually give us any particular details about medical necessity. Again, you know, Relator's focus here is that these tests weren't necessary, but in order to come to a determination of medical necessity, we need some sort of details about how this affects a particular patient. Again, well it's the medical director of the clinic saying you are giving standing orders that are not medically justifiable. Right, well with respect to that aspect of it, at most what the particular email shows is an opportunity for fraud that was never carried out. So if you draw all inferences in favor that the, you know, medical director, regional director communication is as plain if alleged as it was, it shows an opportunity for fraud that was stopped by Dr. Elias and did not continue on. The only conclusion that it did is a conclusion with no specific details. And then when you get down to this concept of lack of, you know, maybe an individualized assessment, again we have no details there either. Who's making up these patient care teams? As the physician is not the only part of the care team here under the statute who can make a medical necessity determination. And those are the types of specific factual details that we're missing here. And if I can go back, you know, in addition to the statistics portion of the the claim for payment question, I want to also talk a little bit more about where there's also a lack of claim submission for either of the schemes here. And that's really on the complete lack of details about how a claim for payment works, of plausible details about how a claim for payment works. In the amended complaint, the relator makes assertions about claims for payment under Medicare Part B, but the complaint gets the regulatory scheme wrong. The complaint pleads this as though it's a fee for service under Medicare Part B, but at the point in time when the complaint is making these allegations, it's bundled payments. So with having the regulatory scheme wrong, we're left with no details about how these laboratory standing orders, which are not claims for payments themselves, an order is not a claim for payment, how that would somehow translate into a false claim to a government health care program. And then with respect to the counseling services, we also have no details about how payment works in that situation either. And that's something that the district court recognized in dismissing the D.C. and Virginia state false claims law claims on that basis. There's absolutely nothing said about how the claims for payment are submitted there and nothing about BHG's particular process for billing, who's doing the submitting of billing, you know, how that translates from an order to a bill. And while the district court dismissed the counseling allegations on 12B6 grounds, this court can affirm on any basis in the record, including that 9B aspect. So switching gears to another failure of the complaint on falsity, I just want to start out by noting Relators Council, when they were up here, noted that the district court found that the counseling allegations were not sufficiently pled on materiality, but the court also found that they were not sufficiently pled as to falsity. The court found that the, and I'll reference page JA0423, where the district court found that Relators allegations failed to meet both the falsity and materiality elements as to the counseling. Well, I think he acknowledged that and he said paragraph 90 says that the main exception that we supposedly didn't address is addressed in paragraph 90, which says BHG argues there was supervision, but there wasn't. And it gives some details about that. Why isn't that sufficient to show falsity? Well, with respect to that, if you, if you changed, if you sort of shift the allegation from being a lack of licensure allegation to a lack of supervision allegation, which for the reasons that Judge Pan already identified, doesn't get you all the way there of showing a falsity under the statute, where there's also other exceptions. But if you take that... The other exceptions are things like students and ministers. Do they really need to plead that there weren't? All these clinics are not run by ministers? Well, in order to show false at the end of the statute, they have an obligation to identify what was false. Just saying unlicensed counselors doesn't get you all the way there, where the statute has baked into it exceptions. And that's what the district court was pointing out. Having unlicensed counselors does not by itself create a falsity here. And so when we're looking at a complaint, we need to get over that hurdle and over that allegation. And that's one of the problems with the paragraph 90. If we're just looking at the supervision aspect too, the paragraph 90 is the only paragraph in the entire complaint that talks about supervision. And it's riddled with lack of details and lack of particularity. And if you look at it, it says that there was no, you know, quote, active supervision of unlicensed counselors, but it doesn't define what active supervision is. The Virginia statute doesn't use the word active supervision. That's not a concept that exists in the statute. We're left wondering what that is. Paragraph 90 also acknowledges that there were some supervisors, there's some licensed counselors supervising unlicensed, but it has just a conclusion that there were not enough. But again, we need details. How many, does Relator allege, would have been enough versus not enough? The underlying Virginia statute doesn't have some that's required. So we're missing all of these details as to how this would create a falsity here. Moreover, when we switch into the materiality element, which is a rigorous and demanding element, if Relator is now arguing that it's not just lack of licensure, it's lack of supervision, how does lack of supervision create materiality here? There's simply only conclusory allegations in the complaint about materiality. And the only materiality allegation, the complaint, the bare conclusion that licensure is a prerequisite for payment, which does not meet Escobar's demanding standard, which is a holistic inquiry, has to look at the government's actual behavior, has to look whether it goes to the essence of the bargain. It's not just about whether the statute itself says it's the prerequisite for payment. But even that allegation in the complaint says nothing about supervision as opposed to licensure. We are left with no allegation that lack of supervision would be material. And I see that my time's almost up, so I just briefly wanted to note that Relator has an argument that the district court should not have dismissed the amended complaint with prejudice. But respectfully, the law in this circuit is very clear that a plaintiff forfeits that right to seek, when he fails to seek leave to amend in the lower court, they cannot now seek it on appeal. And that's the holding of Harper Woods Employees Retirement System v. Oliver. Relator here forfeited that opportunity because they never filed a motion for leave to amend with the district court. Thank you. Thank you very much. We'll give you two minutes. Your Honors, to proceed in a false claim case, I don't need a 200-page complaint. I practice around the country. You don't need 100 pages and 500 allegations in every case. These are two simple fraudulent schemes. A standing order from a medical director who never sees the patient, who orders tests, is a classic false claim. The guidance that we cite notes it's a false claim. We allege it's a false claim, and we cite multiple cases in footnote one that talk about other similar cases like it. When the Virginia law requires licensed counselors, and they knowingly and admittedly are not using licensed counselors, I don't need 200 pages and all that level of detail to plead two claims at the motion to dismiss stage when all the allegations are accepted as true and all inferences are in my favor. I am confident I could never draft a complaint with all the level of detail that the defendants want, but we've drafted a complaint that has enough detail that allows us to proceed at the motion to dismiss stage, and that's what we're asking at this time. Specifically, counsel said, too, that the email that you asked about shows that maybe they stopped the conduct. Well, if they stopped it, that meant it was occurring, and I have a claim for the time it was occurring, and again, counsel is saying, well, it may mean this. It may mean that. The regulations may mean this. It may be administered. There may be all sorts of things happening, but at the motion to dismiss stage, all we need to prove are allegations to get by rule eight and nine B, plausibly allege fraud and put them on notice. They clearly are on notice, and we believe that our complaint does that. At worst, if we have pled the claims and we're missing a materiality allegation, I would respectfully request in the interest of justice for leave to amend. We did not file a separate motion. I don't think we needed to because we did request it in our opposition, but in this particular case, when the district court said we pled the claims but were missing one thing because they are looking at facts not otherwise, I think this would be a case that we would be allowed to correct those issues if there are any. Thank you. Thank you. This is submitted.
judges: Pan; Garcia; Edwards